UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN MEDICAL ASSOCIATION, AMERICAN HOSPITAL ASSOCIATION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>*Defendants*. | Civ. Action No. 21-cv-3231-RJL |

**PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO ESTABLISH BRIEFING SCHEDULE**

Despite several attempts to reach a mutually agreeable expedited briefing schedule, Plaintiffs are compelled to oppose Defendants' proposed schedule, in which Defendants have represented that they need six weeks to respond to an emergency motion to stay an interim final rule that is already in effect. Defendants' proposed schedule fails to properly account for the irreparable harms that are occurring right now as a direct result of their unlawful interim final rule. They misstate the effect of a stay under 5 U.S.C. § 705. They mistakenly claim to need the administrative record in a case that presents purely legal issues about the proper interpretation of the No Surprises Act. And they nowhere acknowledge that Defendants took nine months to issue an interim final rule without notice and comment on the basis of a purported need for speed, *see* Requirements Related to Surprise Billing; Part II, 86 Fed. Reg. 55,980, 56,044 (Oct. 7, 2021), even as they seek to slow walk judicial consideration of that rule after it has been challenged as contrary to law.

That said, Plaintiffs recognize that the holidays are approaching, and they do not seek to impose unnecessary burdens on the Court or government counsel. Accordingly, Plaintiffs propose

1

x

a briefing schedule that is meaningfully longer than LCvR 65.1(c) provides, which will accommodate any end-of-year demands, while providing some protection to the Plaintiffs' member physicians and hospitals from ongoing irreparable harms. Specifically, Plaintiffs respectfully submit that an appropriate schedule, which will account for the upcoming holidays while expediting briefing, is for Defendants to file their opposition to the emergency stay motion on **January 6, 2022**, and Plaintiffs to file their reply brief on **January 17, 2022**. Plaintiffs respectfully request that a hearing then be set at the Court's convenience as soon as possible after the completion of briefing.

## BACKGROUND

On December 9, 2021, Plaintiffs filed this action challenging as *ultra vires* and contrary to law Defendants' interim final rule purporting to implement the No Surprises Act. Compl., ECF. No. 1. On the same day, Plaintiffs filed a "Motion for Stay Pending Judicial Review, or in the Alternative, for Summary Judgment." ECF No. 3 ("Stay Motion").

On December 8, 2021, the day before Plaintiffs filed their Stay Motion, undersigned counsel contacted Defendants' counsel to confer pursuant to LCvR 7.1(m). During that exchange of emails, counsel began to discuss scheduling. Undersigned counsel represented to government counsel that it would be "willing to agree to a schedule that allows for a hearing in mid-to-late January," offered to "work[] backwards" from that schedule to accommodate the holidays, and asked for a phone conversation. Shortly after filing the Complaint and Stay Motion on December 9, undersigned counsel emailed Defendants' counsel a copy of their pleadings, directed him to the case number, and asked again to discuss scheduling.

The next evening, undersigned counsel emailed Defendants' counsel with electronic copies of all filings, and asked whether he would like hard copies mailed to him. Defendants' counsel

sent a reply email stating "Thanks" and asking to confer regarding scheduling after the weekend. After several attempts to find a mutually acceptable expedited briefing schedule, Defendants' counsel filed the instant motion, in which the government effectively requests six weeks to file its response to an emergency stay motion.

## ARGUMENT

This Court typically "strongly discourage[s]" motions for extensions absent consent by the parties. *E.g.*, Case Management Order at 4, *Ass'n of Air Ambulance Servs. v. U.S. Dep't of Health and Hum. Servs.*, No. 1:21-cv-3031-RJL (D.D.C. Dec. 13, 2021), ECF No. 6. There is no ground to grant the government's request for a lengthy extension here.

*First*, Defendants' proposed briefing schedule does not account for irreparable harms that are occurring as a direct result of the unlawful features of their interim final rule. While Defendants spend several paragraphs discussing when, in their view, arbitrations may begin, they do not properly account for the harms that are occurring *right now*, as a result of an interim final rule that is already effective. As Plaintiffs explained in their Stay Motion (at 34), insurers have already started to take advantage of the interim final rule to immediately "demand that in-network providers accept commensurately low rates, threatening to cancel in-network agreements if providers do not capitulate." The Stay Motion (at 34) provided the example of an insurer that has sent a letter to numerous healthcare providers stating that "[w]hile the exact, final QPAs are not yet available . . . the Interim Final Rules provide enough clarity to warrant a significant reduction in your contracted rate with Blue Cross NC." Likewise, Plaintiff-Renown Hospital explained that, on December 2, 2021, another insurer "explicitly stated [it would] no longer contract for emergency services with Renown" because of the September Rule. *See* Sexton Decl. ¶ 24. The

other declarants, UMass Memorial Hospital and Dr. Stuart M. Squires, recounted similar ongoing harms in their discussions with insurers.

Defendants try to minimize these harms by calling them mere "discomfort," Mot. to Establish Br. Schedule ("Mot.") ¶ 17, but they completely ignore evidence indicating that the "crippling" losses resulting from the interim final rule will make it "even more difficult to provide the same treatments to those patients who turn to us for their healthcare needs, many of whom are the most vulnerable in our communities, be they children or those from rural parts of our state." *See* Sexton Decl. ¶¶ 26–27.

In fact, Defendants do not dispute that insurers are driving what they call "hard bargains" as a direct result of the unlawful features of the interim final rule.  Mot. ¶ 17.  Yet they incorrectly assert that an emergency stay of those unlawful features would not redress the harms healthcare providers are experiencing today.  An emergency stay under 5 U.S.C. § 705 would remove the legal leverage that insurers are presently using to demand immediate rate reductions.  And a ruling from this Court on the likelihood of success on the merits would demonstrate to those insurers that Defendants' interpretation of the No Surprises Act is manifestly contrary to law.  This more than satisfies the standard for emergency relief under Section 705.  *E.g.*, *Hunter v. FERC*, 527 F. Supp. 2d 9, 14–15 (D.D.C. 2007) (Leon, J.) ("Accordingly, even if Hunter need not prove that FERC's action is the sole cause of his harm to prevail on his motion for a preliminary injunction, he must still demonstrate that enjoining FERC's enforcement action will alleviate the threat of irreparable harm to him and his business."); *Xiaomi Corp. v. Dep't of Def.*, No. CV 21-280 (RC), 2021 WL 950144, at *11 (D.D.C. Mar. 12, 2021) (enjoining government action that was already causing, and would imminently cause, plaintiff to lose contracts).

*Second*, Defendants assert that an extension is needed to prepare an administrative record. But this single-count case involves a pure legal question about the appropriate interpretation of the No Surprises Act. *E.g., Pharmaceutical Rsch. & Mfrs.of Am. v. United States Dep't of Health & Hum. Servs.*, 138 F. Supp. 3d 31, 43–44 (D.D.C. 2015) ("[N]othing . . . indicate[d] that the administrative record . . . would change HHS's legal interpretation" with respect to "a pure question of statutory interpretation"). Unlike *Association of Air Ambulance Services v. United States of Health & Human Services*, this case does *not* include a separate claim challenging an earlier interim final rule that might require review of an administrative record. In any event, if the government's delay in producing administrative records were permitted to forestall a court's consideration of requests for emergency relief, then the entire purpose of Section 5 U.S.C. § 705 would be frustrated.

*Third*, Defendants do not address the stop-and-start nature of their response to the No Surprises Act. That Act required Defendants to issue regulations related to arbitrations by December 27, 2021. *See* 42 U.S.C. § 300gg-111(c)(2)(A). The Defendants waited more than nine months to issue such regulations. When they finally did so, Defendants issued an interim final rule, claiming that "it would be impracticable and contrary to the public interest to delay putting the provisions in these interim final rules in place until after a full public notice and comment process has been completed." 86 Fed. Reg. 55,980, 56,044. Now, however, the Departments are affirmatively seeking a delay so that their interim final rule is shielded from judicial review and so they can develop their "forthcoming final rules under the Act," Mot. ¶ 17, which Defendants have suggested are unlikely to change, *see* Stay Mot. 10–11. The same speed in providing clarity to regulated entities that Defendants cited in their interim final rule is even more critical now that the

Defendants have imposed an atextual interim final rule. The only way to achieve such clarity is with an expeditious decision on this Stay Motion.

*Fourth*, Defendants insist (Mot. ¶ 11) that the need to file summary judgment pleadings in two other cases presenting similar legal issues requires this Court to place an emergency stay motion at the back of the line. This gets it exactly backwards. Not only does Plaintiffs' clear demonstration of ongoing irreparable harm demand *more* expedited review than in those other cases, Defendants fail to account for the fact that any work done on the legal question in this Stay Motion can easily be applied to those other cases. Defendants are therefore wrong to assert (*id.*) that "it would not be practicable to simultaneously prepare briefing in all three cases."

What is more, the government has been aware of legal arguments challenging aspects of the interim final rule for weeks. And it is blackletter administrative law that an "agency must defend its actions based on the reasons it gave when it acted." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020). Thus, Defendants are limited in what they can argue to defend the challenged features of the interim final rule. It should not require the Department of Justice six weeks of work to develop statutory interpretation arguments that are supposed to reflect the agency's stated rationale—rather than "post hoc" explanations. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ("[C]ourts may not accept . . . counsel's *post hoc* rationalizations for agency action[.]").[1]

---

[1] The government also cannot credibly contend that it lacks the manpower and womanpower to respond expeditiously to an emergency stay motion. The Department of Justice—and the four Defendant agencies—have numerous lawyers who could defend their regulatory actions. If it is not "practicable" for a particular government attorney to prepare briefing in these cases, Department of Justice supervisors can presumably assign additional counsel.

Although there is no reason to deviate from the emergency relief schedule set forth in LCvR 65.1(c), Plaintiffs have always sought to respect any holiday commitments—and, just as importantly, to ensure that this Court has ample time to issue a decision in this case. This is why, for example, Plaintiffs' Stay Motion stated (at 3): "[U]nder LCvR 65.1(d), Plaintiffs are entitled to a hearing on this motion within 21 days of its filing. Due to the holidays, however, Plaintiffs would be amenable to a hearing during the first week of January or at another date convenient to the Court that will allow it to render a decision on this motion before March 1, 2022."[2]

Plaintiffs continue to believe that an expedited schedule roughly consistent with LCvR 65.1(c) is practicable and appropriate. Until Defendants filed the instant motion, however, government counsel never informed Plaintiffs of his end-of-year travel plans. To accommodate those plans, and to ensure ample time for the Court's consideration of this case, Plaintiffs are amenable to a schedule whereby Defendants file their opposition to the emergency stay motion on **January 6, 2022**, and Plaintiffs file their reply brief on **January 17, 2022**.[3]

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in part and extend the briefing schedule such that Defendants file their opposition to the emergency stay motion on **January 6, 2022**, and Plaintiffs file their reply brief on **January 17, 2022**. A proposed order is attached.

---

[2] In their Stay Motion, Plaintiffs moved in the alternative for summary judgment, "provided Defendants consent to summary judgment proceedings on a mutually acceptable expedited schedule." Stay Mot. at 2. Because Defendants have not consented to the necessary expedition, resolution of the motion for emergency relief under Section 705 is appropriate here.

[3] Plaintiffs defer to the Court's preferences with regard to the need for, and the scheduling of, a hearing on the Stay Motion, but they respectfully request that the Court hold any hearing as soon as possible after the completion of briefing so that it can render a decision that will appropriately address the ongoing irreparable harms described above and in their Stay Motion.

Respectfully submitted,

Dated:  December 15, 2021

   /s James E. Tysse
James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Kristen E. Loveland (*admission pending*)
  D.C. Bar No. 1684978
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
jtysse@akingump.com

*Counsel to Plaintiffs American Medical Association, Stuart M. Squires, M.D., and Victor F. Kubit, M.D.*

Chad Golder
  D.C. Bar No. 976914
Law Office of Chad Golder
514 6th Street, NE
Washington, DC 20002
Telephone: (203) 506-0670
golderlawoffice@gmail.com

*Counsel to Plaintiffs American Hospital Association, Renown Health, and UMass Memorial Health Care, Inc.*