**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN MEDICAL ASSOCIATION, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>　　　　　　　Defendants. | No. 1:21-cv-03231-RJL |

**PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE CASES OR, IN THE ALTERNATIVE, FOR AN EXTENSION OF TIME**

Plaintiffs are not opposed to Defendants' proposals that would actually promote efficiency and judicial economy, but Plaintiffs oppose consolidated disposition of this case with *Ass'n of Air Med. Servs. v. U.S. Dept' of Health and Hum. Servs.*, No. 21-cv-03031-RJL (D.D.C. Nov. 16, 2021) ("*AAMS*"). *AAMS* presents additional fact-based claims, and consolidation for disposition would prejudice Plaintiffs by very likely causing further delay in their pursuit of a final determination on their request for a stay of the September 2021 interim final rule under 5 U.S.C. § 705, which is needed in order to resolve ongoing and soon to be increasing harm caused by that *ultra vires* rule. Defendants have already obtained an extended briefing schedule over Plaintiffs' objection, and Plaintiffs' need for expedited relief is great. Accordingly, Plaintiffs oppose Defendants' motion to consolidate (ECF No. 56) insofar as it seeks consolidated disposition, but Plaintiffs do not oppose the first three of Defendants' requests, namely: (1) the filing of a single reply brief, not to exceed thirty pages, in support of their cross-motions for summary judgment in both cases, to be due on or before February 18, 2022 in each case; (2) the filing of a single joint appendix; and (3) a

1

consolidated hearing if the Court prefers to proceed in that fashion. Accordingly, Plaintiffs ask the Court to enter Plaintiffs' proposed order, which streamlines the two cases while respecting their distinct features.

1. The decision to consolidate actions involving common questions or law or fact is within the discretion of the court. Fed. R. Civ. P. 42(a)(2); *Nat'l Sec. Counselors v. CIA*, 322 F.R.D. 41, 43 (D.D.C. 2017). "In determining whether to exercise such discretion, courts weigh considerations of convenience and economy against considerations of confusion and prejudice." *Klayman v. Judicial Watch, Inc.*, 255 F. Supp. 3d 161, 174 (D.D.C. 2017) (citations and internal quotation marks omitted). The Court may in its discretion consolidate the cases for all purposes or only for certain purposes, and consolidation cannot restrict plaintiffs' ability to assert their claims in their own case numbers. *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018) ("District courts enjoy substantial discretion in deciding whether *and to what extent* to consolidate cases." (emphasis added)); *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 93 (D.D.C. 2014) (noting that consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another" and that courts should treat "consolidated actions as separate in character, with each requiring a separate judgment" (citations omitted)). Here, months into the litigation, and after multiple party and amicus briefs have been filed, Defendants effectively seek full consolidation of the two actions—even though Plaintiffs have already agreed to all of Defendants' requests that would actually promote judicial economy.

2. Defendants fail to explain why considerations of convenience and economy support consolidating the two actions for purposes of resolution. Plaintiffs have already acceded to all of the steps Defendants sought that could genuinely serve the purpose of efficiency—a single brief, a single joint appendix (even though an administrative record is not required to adjudicate

Plaintiffs' statutory claims), and a joint hearing (if desired by the Court). And, although the two cases present one similar claim (in addition to the distinct claim asserted in *AAMS*), the Court would be free to address the common claim in a single order entered on both dockets.

Tellingly, Defendants have offered no reason why they are seeking consolidation now, when commonalities between the cases were evident months ago. Indeed, Defendants were undoubtedly aware of the possibility for consolidation when they filed their proposed briefing schedule, which itself slow-walked Plaintiffs' request for a stay or expedited summary judgment consideration. At this late date, the main "benefit" of full consolidation appears to be the prospect that combining Plaintiffs' suit with the more-complicated *AAMS* action would further delay final disposition of Plaintiffs' suit and stay motion (or Plaintiffs' ability to take appeal if a stay is denied). But one party's ability to disadvantage the rights of another is not a cognizable reason to consolidate cases for disposition.

3. The prejudice to Plaintiffs from full consolidation weighs heavily against consolidated disposition. The claims in the two cases are distinct. Plaintiffs here assert a single claim challenging the validity of select portions of Defendants' September 30, 2021 interim final rule relating to the legal standard for arbitrators to apply in making their arbitration decisions under the No Surprises Act ("Act"), *see* Compl. ¶ 28, (Dec. 9, 2021) ECF No. 1.

In stark contrast, the plaintiff in *AAMS* challenges different (albeit related) portions of that rule, and *also* brings an additional, ostensibly record-dependent claim challenging various aspects of Defendants' separate July 13, 2021 interim final rule concerning how insurers calculate certain payment amounts under the Act. *See* Compl. ¶¶ 131-39, *AAMS* (D.D.C. Nov. 16, 2021) ECF No. 1. That is a separate challenge, to a separate rule, addressing particulars relating exclusively to entities other than the Plaintiff providers and the associations representing these providers in this

case.  The adjudication of the additional claim in *AAMS* would likely take more time than the review of Plaintiffs' single statutory claim here.  Thus, consolidated disposition would materially disadvantage Plaintiffs, who would have to await resolution on all of the claims in *AAMS* before they could obtain final relief (or the ability to appeal, if necessary) on the clean legal question and request for a stay they have presented.  The Supreme Court has observed that "consolidation [can]not prejudice rights to which the parties would have been due had consolidation never occurred" and that "[f]orcing an aggrieved party to wait for other cases to conclude would substantially impair his ability to appeal from a final decision fully resolving his own case."  *Hall*, 138 S. Ct.  at 1128 (citations omitted).  That is precisely the kind of prejudice that full consolidation for purposes of resolution would cause here.

4.      Unlike the plaintiff in *AAMS*, Plaintiffs here seek expedited relief through a stay of relevant portions of Defendants' September 2021 rule.  *See* Pls.' Mot. for Stay Pending Judicial Review, or in the Alternative, for Summ. J., (Dec. 9, 2021) ECF No. 3.  Plaintiffs seek this emergency relief in light of the *unrefuted* irreparable harm they already suffer due to the effect of the September 2021 rule on provider contracts with insurers,[1] as well as the increased harm they indisputably will

---

[1] Defendants' summary judgment opposition disputes that the rule's effect on these contract negotiations represents irreparable harm, but they have offered no counter-affidavits to dispute the immediate harmful effect the rule is actually having on Plaintiffs.  *See* Defs.' Mem. in Support of Their Cross-Motion for Summ. J. and in Opp'n to Pls.' Mot. for Stay Pending Judicial Review, or in the Alternative, for Summ. J. 33-34, (Jan. 24, 2022) ECF No. 52.  Moreover, contrary to Defendants' argument, courts have routinely found irreparable harm in these same circumstances—where a defendant's actions impede a plaintiff's ability to negotiate with third parties.  *See, e.g.*, *Fox Tel. Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 50 (D.D.C. 2013) (finding irreparable harm where evidence showed that defendant's unauthorized online streaming gave counterparties leverage "in seeking to negotiate lower fees" with plaintiff copyright holders); *Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (affirming preliminary injunction where "[t]he district court had substantial evidence before it that [the defendant's] service undermines the value of the [plaintiff's] copyrighted works, their 'windowing' business model, and their goodwill and negotiating leverage with licensees"); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996) ("With respect to the likelihood of irreparable harm, the petitioners

face after March 1 if the unlawfully adopted rule regarding arbitration decisions is implemented in actual decisions. *See* Pls.' Mem. in Support of Their Mot. for Stay Pending Judicial Review, or in the Alternative, for Summ. J. 33-39, (Dec. 9, 2021) ECF No. 3; Pls.' Mem. in Opp'n to Defs.' Mot. to Establish Briefing Schedule 3-4 (Dec. 15, 2021) ECF No. 14. *Contra* Defs.' Mem. in Support of Their Cross-Motion for Summ. J. and in Opp'n to Pls.' Mot. for Stay Pending Judicial Review, or in the Alternative, for Summ. J. 32-34, (Jan. 24, 2022) ECF No. 52. Having failed to introduce any evidence rebutting the harms described in Plaintiffs' declarations, there can be no question that further delay associated with consolidation would exacerbate those harms.

In the ordinary course, the concerns for timely disposition of Plaintiffs' request for emergency relief would have been addressed according to the emergency relief schedule in LCvR 65.1(c). *See* Pls.' Mem. in Opp'n to Defs.' Mot. to Establish Briefing Schedule 3-4 (Dec. 15, 2021) ECF No. 14. Here, instead, the Court adopted a summary judgment briefing schedule proposed by Defendants, but which was evidently intended to allow resolution of Plaintiffs' claims by the requested March 1, 2022 date. That schedule would either grant Plaintiffs timely relief or, if relief were denied, ensure Plaintiffs had an opportunity to seek emergency relief on appeal from the D.C. Circuit. Now, however, Defendants attempt to deprive Plaintiffs of that procedural protection through an unjustified, belated request to consolidate Plaintiffs' case for purposes of disposition with another case on a slower timetable and without a request for emergency relief.[2] *See Hall*, 138

---

initially assert that their interest in productive ongoing negotiations and arbitrations regarding the implementation of the Act will be irreparably harmed if the FCC's pricing regulations are not stayed. . . . We are persuaded, however, by the petitioners' evidence that the negotiations preferred by the Congress are already breaking down due to the competitors' desire to hold out for the FCC's proxy rates.").

[2] By contrast, in *AAMS*, the parties have made a filing identifying *April 2022, rather than March 1*, as the critical date. *See* Joint Mot. to Establish Briefing Schedule, *AAMS* (D.D.C. Dec. 14, 2021) ECF No. 8.

S. Ct. at 1128 (noting that consolidation should not prejudice a party's rights absent consolidation, including "his ability to appeal from a final decision fully resolving his own case" (citation omitted)).

5.      Defendants' Motion erroneously characterizes Plaintiffs' motion for expedited relief as untimely.[3]  *See* Defs.' Mot. to Consolidate ¶ 11.  Plaintiffs filed their Complaint and Motion for Stay on December 10, 2021.  "[W]aiting to file for preliminary relief until a credible case for irreparable harm can be made [was] prudent rather than dilatory."  *Tex. Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 245 (D.D.C. 2014) (*quoting Arc of Cal. v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014)).  It was not until insurers started informing providers in November 2021 that they were going to use the September 2021 rule as the basis to make significant reductions in contracted rates or to discontinue contracts for certain services altogether that Plaintiffs were put on notice that Defendants' rulemaking would have these immediate irreparable consequences.  *See* Pls.' Mem. in Support of Their Mot. for Stay Pending Judicial Review, or in the Alternative, for Summ. J. 34-35, (Dec. 9, 2021) ECF No. 3.  Likewise, Plaintiffs had hoped that Defendants would address these concerns during the notice and comment period, but public statements from Defendants at this time indicated that the September rule was unlikely to change.  *Id*. at 10-11.  While Plaintiffs moved swiftly to file the Motion for Stay, any purported short delay in moving for emergency relief would not be grounds for depriving Plaintiffs of their remedy in light of the ongoing, worsening harms being suffered by the provider Plaintiffs and their associations' members.  *See Tex. Children's Hosp.*, 76 F. Supp. 3d at 245 (granting preliminary injunction and

---

[3] Ironically, Defendants manage to mischaracterize Plaintiffs' December 2021 Motion for Stay as coming too late after the September 2021 rule, while also insisting, mistakenly, that Plaintiffs are too early to claim harm.  *See* Defs.' Mot. to Establish Briefing Schedule 3 (Dec. 14, 2021) ECF No. 13.

noting that "'tardiness is not particularly probative in the context of ongoing, worsening injuries' because 'the magnitude of the potential harm becomes apparent gradually, undermining any inference that the plaintiff was sleeping on its rights'" (*quoting Arc of Cal.*, 757 F.3d 975 at 990)).

To make matters worse, it was *Defendants* who insisted on lengthening the briefing schedule based, in part, on an asserted need to assemble the administrative record due to purported factual issues. *See* Defs.' Mot. to Establish Briefing Schedule 4 (Dec. 14, 2021) ECF No. 13 ("This proposed schedule would also afford the Defendants time to prepare and to file the administrative record, which will aid this Court's review of the Plaintiffs' claims."). Yet, while Defendants cite the administrative record in the background section of their cross-motion, Defendants themselves have now acknowledged in their cross-motion that Plaintiffs' lawsuit "presents purely legal issues." Defs.' Mem. in Support of Their Cross-Motion for Summ. J. and in Opp'n to Pls.' Mot. for Stay Pending Judicial Review, or in the Alternative, for Summ. J. at 32.

For all of these reasons, joint disposition of the two cases would be inequitable. *See Blasko v. Wash. Metro Area Transit Auth.*, 243 F.R.D. 13, 15 (D.D.C. 2007) ("To determine whether consolidation is appropriate, a court should consider both equity and judicial economy."). Consideration of Plaintiffs' stay motion has already been delayed at Defendants' request, and consolidation will unnecessarily delay it even further. Accordingly, Plaintiffs request that the Court deny Defendants' request for joint disposition of these cases.

Respectfully submitted,

/s/ Stephanie Ann Webster
Stephanie Ann Webster
 D.C. Bar No. 982539
Douglas Harry Hallward-Driemeier
 D.C. Bar No. 994052
Ropes & Gray LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 508-4859
Stephanie.Webster@ropesgray.com

Chad Golder
 D.C. Bar No. 976914
American Hospital Association
800 10th Street, N.W.
Two CityCenter, Suite 400
Washington, D.C. 20001
Telephone: (202) 262-4624
cgolder@aha.org

*Counsel for Plaintiffs American Hospital Association, Renown Health, and UMass Memorial Health Care, Inc.*

James E. Tysse
 D.C. Bar No. 978722
Kelly M. Cleary
 D.C. Bar No. 985642
Caroline L. Wolverton
 D.C. Bar No. 496433
Daniel David Graver
 D.C. Bar No. 1020026
Kristen E. Loveland (*admission pending*)
 D.C. Bar No. 1684978
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
jtysse@akingump.com

*Counsel for Plaintiffs American Medical Association, Stuart S. Squires, M.D., and Victor F. Kubit, M.D.*